UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re NORTHWEST TERRITORIAL MINT, LLC,

Civil Action No. C16-1392RSL

Bankr. Case No. 16-11767CMA

DIANE ERDMANN,

Appellant,

ORDER ON APPEAL

v.

MARK CALVERT, as Chapter 11 Trustee, and THE TODD TRACY LAW GROUP, PLLC,

Appellees.

This matter comes before the Court on cross motions filed by the parties. With one exception, the facts giving rise to this appeal are not in dispute. In March 2016, a $12.5 million judgment was entered against the debtor, Northwest Territorial Mint, LLC ("NWTM"). The debtor hired The Tracy Law Group, PLLC ("TTLG") to prepare a bankruptcy petition. TTLG requested an advance fee deposit of $150,000 and insisted that it be paid by a third party. Appellant Diane Erdmann paid the deposit using $50,000 transferred from her checking account and $99,460 received from the sale of gold coins.[1] Although no written fee agreement was

---

[1] The source of these funds is hotly contested. Erdmann maintains that the funds were derived from investments she made with life insurance proceeds she received when her husband died in 1993. The Trustee provided evidence that Erdmann and the debtor's owner, Ross Hansen, took cash and gold from the debtor's premises shortly before the debtor filed its bankruptcy petition and asserts that the

ORDER ON APPEAL

signed, the parties intended that the money would remain Erdmann's property unless and until it was earned by TTLG for services performed on behalf of the debtor.

TTLG filed the bankruptcy petition on April 1, 2016, and "filed numerous motions, at the request of [its] client, to keep the lights on and the business going." Bankr. Case No. 16-11767, Dkt. # 791 at 76. Within days, the bankruptcy court directed that a Chapter 11 trustee be appointed. TTLG filed a motion to withdraw as counsel on April 18, 2016, noting that it had drawn down $21,885.50 of the fee deposit for pre-petition activities and another $1,717 for the Chapter 11 filing fee. TTLG requested direction regarding what to do with the balance of the funds, $125,857.50, in light of competing claims asserted by Erdmann and the trustee. Following an evidentiary hearing, the bankruptcy court determined that TTLG had incurred compensable post-petition fees, that Erdmann had provided the deposit funds, that the trustee had failed to prove that the funds were stolen from the debtor, that the estate nevertheless had a beneficial interest in the funds that was protected by the automatic bankruptcy stay, that Erdmann violated the stay when she demanded that TTLG release the funds to her after the petition was filed, and that the violation harmed TTLG. Bankr. Case No. 16-11767, Dkt. # 580.

The trustee challenges on appeal the decision that the deposited funds belong to Erdmann. For her part, Erdmann challenges the award of post-certification fees to TTLG and the automatic stay findings. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158. Having reviewed the memoranda and the record below, the Court finds as follows:

**A. OWNERSHIP OF DEPOSITED FUNDS**

The trustee argues that the bankruptcy court applied the wrong standard of proof, requiring too little from Erdmann in support of her claim that the fee deposit was funded from her personal property and requiring too much from the trustee to prove that the deposit came from the debtor's estate. Although this argument is couched in terms of legal error, there is no

---

deposit was paid using property of the bankruptcy estate.

indication that the bankruptcy court applied any standard other than preponderance of the evidence: Judge Alston did not specify a burden of proof in his decision, and the analysis suggests only a shifting, not a fluctuating, burden. The trustee is essentially challenging the bankruptcy court's factual findings and must therefore establish clear error. "Under this standard, we accept findings of fact made by the bankruptcy court unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." Latman v. Burdette, 366 F.3d 774, 781 (9th Cir. 2004).

The bankruptcy court required Erdmann to prove an interest in the funds. She did so by identifying the immediate sources of the funds deposited with TTLG and providing testimony regarding how she came to possess $50,000 in cash and $100,000 in gold coins. The story Erdmann told was not objectively incredible: she had few living expenses and invested the bulk of a $133,900 insurance policy for twenty-five years, doubling her money during a period in which the price of gold tripled. There is no clear error on this point. The burden then shifted to the trustee as the party seeking to sweep assets into the estate to show that the deposited funds actually came from the debtor. In re Neidorf, 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015); In re Dunn, 436 B.R. 744, 747 (Bankr. M.D. Ga. 2010); In re Altman, 230 B.R. 6, 11 (Bankr. D. Conn. 1999). As the bankruptcy court recognized, there was a lot of evidence from which one could conclude that Erdmann and Hansen removed property from the debtor's facility on the eve of the bankruptcy filing and that Erdmann had ample opportunity to take the debtor's property without raising suspicion. Nevertheless, Judge Alston found that the trustee had not proven that the assets at issue, namely the money that was wired to TTLG and the gold bullion that was sold on March 31, 2016, came from the debtor. While the bare record may favor a finding in the trustee's favor on this issue, Judge Alston had the opportunity to hear from the witnesses, evaluate their credibility, question the attorneys, and consider the evidence in context. No definite or firm conviction of error arises from a review of the record. The bankruptcy court's determination that the deposited funds belonged to Erdmann is therefore affirmed.

**B. TTLG'S STANDING TO SEEK EMPLOYMENT**

Federal Rule of Bankruptcy Procedure 2014(a) states that "[a]n order approving the employment of attorneys . . . shall be made only on application of the trustee or committee." In the Ninth Circuit, however, an attorney may seek his own appointment where: (1) the attorney was hired by the debtor in possession with assurances that court approval would be sought; (2) the debtor in possession fails to seek judicial approval; and (3) the attorney has benefitted the estate based on the assurances provided. In re Mehdipour, 202 B.R. 474, 479 (B.A.P. 9th Cir. 1996). Judge Alston applied this test, finding that the conduct of the parties evinced an intent to have TTLG represent the debtor in bankruptcy and an implicit promise to seek the necessary court approval. The court also found that TTLG, on behalf of the debtor, was unable to seek approval because a trustee was appointed almost immediately, that TTLG provided significant benefit to the debtor's estate, and that allowing TTLG to request its own appointment would prevent a windfall in the trustee's favor. Bankr. Case No. 16-11767, Dkt. # 791 at 73. No legal or factual error has been shown.

**C. TTLG'S QUALIFICATION TO SERVE AS DEBTOR'S COUNSEL**

The Honorable Vincent P. Zurzolo, United States Bankruptcy Judge in the Central District of California, established a bright line rule regarding disqualification from appointment as attorney for the debtor. If an attorney accepted payment from a third party in Judge Zurzolo's courtroom, there was a presumption that he or she was serving two masters and that the conflict disqualified the attorney from employment. In re Hathaway Ranch Partnership L.P., 116 B.R. 208, 219 (Bankr. C.D. Cal. 1990). Judge Alston rejected the Hathaway analysis, however, instead noting that Washington's Rules of Professional Conduct do not preclude third party payment of advance fee deposits and adopting the case-by-case approach of In re Lotus Properties LP, 200 B.R. 388 (Bankr. C.D. Cal. 1996). Lotus Properties identifies a number of factors that serve as guidelines when evaluating potential conflicts (Id. at 392-395) and ultimately concludes that the reasonableness of the arrangement, the parties' good faith, and the

ORDER ON APPEAL -4-

parties' understanding of counsel's duty of loyalty "provide sufficient grounds to show that no conflict exists" (Id. at 395-96). Judge Alston appropriately applied the Lotus Properties analysis and ultimately reached the same conclusions regarding reasonableness, good faith, and knowledge. Bankr. Case No. 16-11767, Dkt. # 791 at 80. No legal or factual error has been shown.

**D. NUNC PRO TUNC EMPLOYMENT**

"In bankruptcy proceedings, professionals who perform services for a debtor in possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by a court order." In re Atkins, 69 F.3d 970, 973 (9th Cir. 1995). A retroactive (nunc pro tunc) order allowing the recovery of fees is permitted, however, where: "(1) the applicant has a satisfactory explanation for the failure to receive prior judicial approval; and (2) the applicant has benefitted the estate in some significant manner." In re Mehdipour, 202 B.R. at 479. The bankruptcy court applied the correct test and made the necessary factual findings. Bankr. Case No. 16-11767, Dkt. # 791 at 75-78. No legal or factual error has been shown.

**E. VIOLATION OF THE STAY**

As discussed above, the bankruptcy court determined that the advance fee deposit belonged to and was the property of Erdmann. TTLG was authorized to use the funds to pay its pre- and post-certification fees, but the remainder was to be returned to Erdmann. The court nevertheless found that when the debtor filed its bankruptcy petition, the deposited funds became the property of the bankruptcy estate. Dkt. # 580 at 14. The cases on which Judge Alston relied, In re Radulovic, 2006 WL 6810999 (B.A.P. 9th Cir. Aug. 18, 2006), and In re Datesman, 1999 WL 608856 (Bank. E.D. Pa. 1999), are easily distinguished. In Radulovic, the debtor paid the fee advance. Not surprisingly, the court found that property which was the debtor's prior to the bankruptcy filing became property of the estate upon filing. In Datesman, the debtor borrowed money from his girlfriend to pay the fee deposit. The debtor therefore had a pre-existing interest in the loan proceeds, and that interest transferred to the estate upon filing for bankruptcy.

In our case, the debtor neither paid the fee from its own accounts nor borrowed money to pay the fee. Erdmann, a third party, paid the fee deposit and was entitled to its return unless and until the attorney provided services and earned fees. The debtor had no interest in the funds prior to filing for bankruptcy, and there is no suggestion in the statute or the case law that such an interest could spring from the filing. TTLG makes no attempt to defend the bankruptcy court's decision on the law. The Court finds reversible error on this issue.

Because the debtor had no interest in the deposited funds, they were not subject to the protection of the automatic stay. Erdmann's attempts to recover the funds did not, therefore, violate the stay and were not sanctionable. The sanctions order is hereby reversed. The Court notes, however, that Erdmann's consumer protection and bar complaints were quickly and correctly rejected by the Washington State Attorney General and the Washington State Bar Association, respectively.

For all of the foregoing reasons, the decision below is AFFIRMED in part and REVERSED in part. The decision that the remaining deposited funds belong to Erdmann rather than to the bankruptcy estate is AFFIRMED. The award of post-certification fees to TTLG is AFFIRMED. The finding that Erdmann violated the stay and sanctions imposed for that violation are REVERSED.

Dated this 1st day of June, 2017.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge